UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC WILHELM WAGNER,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,[1]<br><br>    Defendant. | Case No. 1:22-cv-01566-CDB<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND AFFIRMING THE COMMISSIONER OF SOCIAL SECURITY'S DECISION<br><br>(Doc. 17) |

Eric Wilhelm Wagner ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance and supplemental security income benefits under the Social Security Act. (Doc. 1). The matter currently is before the Court on the certified administrative record (Doc. 12) and the parties' briefs, which were submitted without oral argument. (Docs. 17, 22).[2] Plaintiff

---

[1] On December 20, 2023, Martin O'Malley was named Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html. He therefore is substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2] Both parties have consented to the jurisdiction of a magistrate judge for all proceedings in this action, in accordance with 28 U.S.C. § 636(c)(1). (Doc. 11).

asserts the Administrative Law Judge ("ALJ") erred in his analysis on two issues and requests the decision of the Commissioner be vacated and the case be remanded. (Doc. 17 at 2, 5-9).

## I. BACKGROUND

### A. Administrative Proceedings

On November 29, 2017, Plaintiff protectively filed an application for benefits pursuant to Title II and Part A of Title XVIII of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, alleging a period of disability beginning on March 16, 2017. (Administrative Record ("AR") 342-60). Subsequently, Plaintiff amended his alleged onset date to October 1, 2020. *Id*. at 64-65. Plaintiff was 60 years old on the alleged disability onset date. *Id*. at 342. The Commissioner denied Plaintiff's application initially and again on reconsideration. *Id*. at 142-59, 167-71. Plaintiff submitted a written request for a hearing by an Administrative Law Judge ("ALJ") on January 21, 2019. *Id*. at 173-74.

On April 17, 2020, ALJ Cole Gerstner held a hearing for Plaintiff's case. *Id*. at 52-54. Plaintiff did not appear for the hearing and the matter was rescheduled. *Id*. at 54. On October 20, 2020, ALJ Michelle Lindsay convened a second hearing for Plaintiff's case. *Id*. at 55-58. Plaintiff did not appear for the hearing and the matter was rescheduled. *Id*. at 58.

On May 12, 2022, Plaintiff represented by counsel Amanda Foss, appeared for a hearing before ALJ Lindsay via telephone. *Id*. at 59-86. Vocational Expert ("VE") Rosalind Lloyd and Hearing Assistant Stacey (last name not provided) also testified at the hearing. *Id*.

### B. Medical Record

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision. *Id*. at 62.

### C. Hearing Testimony

At the outset of the hearing, Counsel Foss confirmed she had an opportunity to review the record and had no objections to anything currently in the record. *Id*. at 62. The ALJ admitted into evidence the documents that were currently marked "1A through 5A, 1B through 53B, 1D through 29D, 1E through 37E, and 1F through 10F." *Id*. The ALJ noted 212 pages of evidence, five documents, were submitted two days before the hearing without a five-day letter by the law

firm Pena & Bromberg.  *Id*.  The ALJ admitted into evidence these documents and marked them as Exhibits 11F through 15F.  *Id*. at 63.  The ALJ confirmed Plaintiff had amended his alleged onset date to October 1, 2020, based on additional earnings.  *Id*. at 64-65.

At the hearing, Counsel Foss asserted Plaintiff suffers from several physical as well as mental health limitations that would keep him from sustaining any type of competitive employment.  *Id*. at 65.  Counsel Foss acknowledged Plaintiff attempted to go back to work in 2019 and 2020 but was unable to sustain full-time work due to primarily his traumatic brain injury and his mental health limitations.  *Id*.  Counsel Foss noted Plaintiff was hospitalized at the end of 2021 on a psychiatric hold and was unable to compete in any type of sustainable employment.  *Id*.

Plaintiff testified he had to take his time to get up stairs and had to use a railing.  *Id*. at 66.  Plaintiff claimed he had not driven in quite some time, but he thought he could still drive if he needed to.  *Id*. at 66-67.  Plaintiff noted he last worked on October 10, 2020, as an associate at Walmart.  *Id*. at 67.  Plaintiff testified he worked in the tire department and his duties included greeting customers and finding out what work they needed, helping put tire shipments away, and mounting tires.  *Id*. at 67-68.  Plaintiff reported he worked in the tire department for six months and before that worked as a janitor at Walmart for a year.  *Id*. at 68.

Next, Plaintiff testified he had worked at Subway for almost 90 days with his duties including making sandwiches and prepping food.  *Id*. at 69.  Plaintiff noted his job ended at Subway because they thought he worked too slow.  *Id*. at 68.  Plaintiff reported he had worked at Ultrex office as a copier repairman for nine years.  *Id*. at 69.  Plaintiff stated he worked for three years as a delivery person for FedEx Ground.  *Id*. at 70.

Plaintiff testified while working in Walmart, in October 2020, he was putting tires away "[a]nd threw one to the upper area and it hit a pole, bounced back, and hit me right in the head, and knocked me to the floor."  *Id*.  Plaintiff reports he went to the emergency room and ended up with "a pretty severe concussion."  *Id*.  Plaintiff states the doctor only provided him with a day and a half off.  *Id*. at 70-71.  Following the incident, Plaintiff claims he forgot several things at work and was subsequently fired.  *Id*. at 71.

Plaintiff testified he felt he was unable to work because he had a bad short-term memory. *Id*. at 71. Specifically, Plaintiff reported he would get overwhelmed, had short-term memory issues, and had issues with his back. *Id*. at 71-72. Plaintiff claimed he was unable to work in 2017 because he contracted swine flu, had issues with depression and drinking, and entered into a psychiatric hospital. *Id*. at 72-73.

Plaintiff reported five months before the hearing he got a pacemaker for his bradycardia. *Id*. at 73-74. Plaintiff claimed the device helped with his chest pains and heart rate. *Id*. at 74. Plaintiff noted he was not able to do a lot of "cardio" because it could affect his health. *Id*. Plaintiff testified he could walk an eighth of a mile or 500 to 1,000 paces before feeling tired and needing to take a break. *Id*. at 74-75. Plaintiff reported he could stand for about 20 minutes before his back starts to hurt. *Id*. at 75. Plaintiff testified as long as he is in a comfortable sitting place he can sit for quite a while. *Id*. Plaintiff noted it would hurt if he wasn't sitting on a nice, padded couch or he didn't have a pillow. *Id*.

Plaintiff testified he was getting okay sleep but couldn't turn his mind off. *Id*. at 75. Plaintiff noted he had anxiety and had experienced hearing voices and having some hallucinations but was taking medication for these conditions. *Id*. Plaintiff reported his conditions improved with medication. *See id*. ("I've been doing pretty good cause they did change a few of my pills. So, you know, that—that seems to be doing better. I don't, you know—I don't think everybody's out to get me."). Plaintiff claimed he had difficulty focusing and concentrating on new television shows. *Id*. at 76. Plaintiff noted his wife reminds him to take his pills. *Id*. Plaintiff stated he did not receive an actual limit in terms of lifting and carrying weight from his chiropractor. *Id*. at 77. Plaintiff testified he could barely move 20 or 25 pounds. *Id*. Plaintiff reported some days he forgot how many days it had been since he showered and had to be reminded. *Id*. Plaintiff noted he would have panic attacks in public places. *Id*. at 78.

Plaintiff testified he spends his day hanging out watching TV, doing a little bit of house cleaning, sweeping, and doing some laundry. *Id*. at 79. Plaintiff reported he used a microwave to make his meals and was able to go to the grocery store once or twice a week but had difficulty remembering what he intended to get. *Id*. at 80. Plaintiff expressed he had difficulty getting

along with other people. *Id*. at 80-81.  Plaintiff testified he also took medication for diabetes and his pain. *Id*. at 80-81.

The VE summarized Plaintiff's work for the last 15 years as a delivery route truck driver, office machine servicer, designated copier technician, retail salesclerk, cleaner (commercial or institutional), and tire changer. *Id*. at 83.

The ALJ proffered a hypothetical to the VE of an individual with the same age and education of the Plaintiff who was limited to medium exertional activity as defined in the Dictionary of Occupational Titles and the Social Security regulations. *Id*.  Further, this proposed individual could occasionally climb stairs and ramps, but can never climb ladders, ropers, or scaffolds. *Id*.  The person can frequently crawl and would need to avoid more than occasional exposure to extreme heat and the person would need to avoid more than occasional exposure to pulmonary irritants, such as fumes, odors, dust, gases, and poor ventilation. *Id*.  The person would need to completely avoid unprotected heights and hazardous moving machinery. *Id*.  The person would be able to understand, remember, and carry out simple instructions, maintain attention and concentration to perform and persist at simple tasks at a consistent pace for two hours at a time without requiring redirection to task. *Id*. at 83-84.  The person could have occasional interaction with the general public and occasional interaction with coworkers and supervisors and the person would require work involving no more than occasional change in a routine work setting. *Id*. at 84.  The VE assessed this person would not be able to perform any of Plaintiff's past work. *Id*.  The VE also determined that the person could still perform work in a variety of fields, including as a laundry worker (DOT #361.687-018), dishwasher (DOT #318.687-014), and dry cleaner (DOT #362.686-010). *Id*.

The ALJ proffered a second hypothetical of an individual who was not able to maintain attention and concentration to perform and persist at even simple tasks for two hours at a time, without requiring redirection to task. *Id*.  The VE assessed this person would not be able to perform any of the jobs mentioned. *Id*.

Counsel Foss proffered a hypothetical of an individual in one of the first two hypotheticals who was absent two days a month unscheduled and continuously. *Id*. at 85.  The VE held this

1  person would be unable to work. *Id*. The VE confirmed the allowable number of absences before an individual would be terminated was one day per month. *Id*.

### D. The ALJ's Decision

On June 2, 2022, the ALJ issued a decision finding that Plaintiff was not disabled. *Id*. at 17-32. The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520(a). *Id*. at 19-31. The ALJ found Plaintiff had not engaged in substantial gainful activity since October 1, 2020, the alleged onset date (step one). *Id*. at 20. The ALJ held Plaintiff possessed the following severe impairments: diabetes, mellitus, obesity, obstructive sleep apnea treated with surgery, major depressive disorder, post-concussive syndrome, and alcohol abuse disorder (step two). *Id*.

The ALJ noted Plaintiff had been previously diagnosed with liver disease, splenomegaly, bradycardia status-post pacemaker implantation, hypercholesterolemia, hydronephrosis, urinary tract infection, epidermal cyst, thrombocytopenia, diarrhea, cellulitis, and COVID-19. *Id*. The ALJ determined these conditions were non-severe. *Id*. The ALJ stated "[w]ith specific regard to [Plaintiff's] bradycardia and status-post pacemaker implantation, the undersigned notes that these impairments do not meet the durational requirement and also do not cause functional limitations. The evidence reveals that the claimant first showed signs of sinus bradycardia in August 2021, with symptoms of weakness, confusion, and fatigue." *Id*.

Next, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). *Id*. at 21-23. The ALJ then assessed Plaintiff's residual functional capacity ("RFC"). *Id*. at 23. The ALJ found that Plaintiff retained the RFC:

> "to perform medium work as defined in 20 CFR 404.1567(c) except that he can occasionally climb stairs and ramps, but can never climb ladders, ropes, or scaffolds. He must avoid more than occasional exposure to extreme heat. He must avoid more than occasional exposure to pulmonary irritants such as fumes, odors, dust, gases, and poor ventilation. He must completely avoid unprotected heights and hazardous moving machinery. He is able to understand, remember, and carry out simple instructions, and is able to maintain attention and concentration to perform and persist

> at simple tasks at a consistent pace for two hours at a time without requiring redirection to task. He can have occasional interactions with the general public and occasional interactions with coworkers and supervisors. He requires work involving no more than occasional change in the routine work setting."

*Id.*

The ALJ acknowledged that while Plaintiff's impairments could reasonably be expected to cause his alleged symptoms, Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id.* at 24-25.

The ALJ found the evidence reflects that Plaintiff had been diagnosed with physical and mental impairments, including diabetes mellitus, obesity, obstructive sleep apnea (OSA) treated with surgery, major depressive disorder, post-concussive syndrome, and alcohol abuse disorder, for which he continued to report symptoms despite treatment. *Id.* at 25. The ALJ noted examinations and objective studies highlighted some abnormal findings but did not provide support for Plaintiff's subjective symptoms or Plaintiff's alleged degree of limitation. *Id.*

The ALJ recognized Plaintiff had reported symptoms of headaches, difficulty maintaining balance, ringing in the ears, shortness of breath, lightheadedness, and mental fogginess. *Id.* The ALJ found Plaintiff's physical examination reports noted normal findings. *Id.* Specifically, the ALJ determined, at times, that Plaintiff was not in distress, exhibited intact cranial nerves, exhibited no extremity edema, possessed a normal gait and station, had a 5/5 muscle strength and intact sensation throughout, had normal coordination, lungs that were clear to auscultation, regular cardiac rate and rhythm, and pupils that were equal and reactive to light. *Id.* The ALJ recognized examining providers had noted occasions where Plaintiff exhibited generalized weakness in his extremities and poor inspiratory effort. *Id.*

The ALJ noted Plaintiff had been prescribed medication for his symptoms and reviewed Plaintiff's objective studies including an MRI of his brain and a nuclear medicine cardiac stress test. *Id.*

1    The ALJ considered the opinion of Robert Gordon, D.O., with whom Plaintiff underwent a physical consultative examination on July 6, 2018. *Id*. Dr. Gordon noted Plaintiff had a normal gait and was able to stoop, walk on heels, walk on toes, and perform tandem walking. *Id*. Dr. Gordon found Plaintiff was able to get onto the examination table without difficulty and did not require the use of any assistive devices, no intact cranial nerves, and no focal neurologic deficits. *Id*. Dr. Gordon noted Plaintiff's lungs were clear, heart regular, normal pulse, 5/5 muscle strength, intact fine motor skills, and normal deep tendon reflexes. *Id*. Dr. Gordon found Plaintiff's straight leg raise test was negative. *Id*. Dr. Gordon assessed Plaintiff with respiratory disorders and diabetes mellitus type II but did not believe that these impairments resulted in any functional limitations. *Id*.

The ALJ found Dr. Gordon's opinion only somewhat persuasive. *Id*. Specifically, the ALJ noted the opinion was supported by an in-person examination of Plaintiff that was within the normal limits but that it was "not entirely consistent with the longitudinal medical evidence that does document that the claimant has some 'severe' impairments that require accommodation in the formulation of his residual functional capacity." *Id*.

The ALJ determined that the evidence did not reflect that Plaintiff had a medical need for a cane, walker, or any type of assistive device, based on his physical normal examinations. *Id*.

Next, the ALJ considered Plaintiff's alleged mental impairments. *Id*. at 26-27. The ALJ found that Plaintiff had been diagnosed with major depressive disorder and alcohol use disorder. *Id*. at 27. The ALJ determined Plaintiff's progress notes reflect some ongoing reporting of symptoms, but also generally stable mental status examinations longitudinally when the claimant is sober. *Id*. at 27.

The ALJ found Plaintiff's mental status examinations noted some abnormal findings, including at times, Plaintiff exhibited impaired short-term memory and to have a flat affect and depressed mood. *Id*. The ALJ also highlighted many normal findings with Plaintiff noted, at times, to be in no distress, alert, oriented, cooperative, with intact remote memory, to have normal affect, attention, concentration, speech, judgment, insight, thought

8

1   content, intact recent memory, and have a logical and linear thought process. *Id*.

2   The ALJ considered Plaintiff's hospitalization and inpatient treatment records from December 29, 2021, through January 6, 2022, for recurrent depression, alcohol withdrawal, and a suicidal plan to drink himself to death. *Id*. The ALJ found Plaintiff's condition was stabilized with treatment. *Id*. A mental status examination performed on discharge noted "many normal findings, including noting [Plaintiff] to be in a good mood, to have a normal affect, to be coherent and rational, to have goal-oriented thought processes, to have intact cognition, and to have significantly improved insight and judgment." *Id*.

The ALJ determined Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent because the objective medical evidence, discussed above, and Plaintiff's reported activity level did not support his allegations. *Id*. at 27-28. The ALJ noted Plaintiff was able to care for his personal needs, drive a car, shop, watch television, build models, sweep, do laundry, vacuum, prepare meals, appropriately handle his finances, spend time with his family members, and was able to attend Alcoholics Anonymous meetings. *Id*. at 28. The ALJ found Plaintiff was able to attend medical appointments as reflected by the medical evidence contained in the record. *Id*.

The ALJ held "[t]o the extent that the longitudinal medical evidence of record supports [Plaintiff's] symptoms pertaining to his ongoing impairments, the undersigned has specifically accommodated these conditions by limiting him to work at less than the full range of the medium exertional level with the postural, environmental, and non-exertional mental limitations detailed above to accommodate his ongoing symptoms." *Id*.

The ALJ found the opinions of the physical State Agency medical consultants Marilyn Orenstein, M.D., and R. Bitonte, M.D., persuasive. *Id*. Based on these opinions the ALJ noted:

> "[Plaintiff] is capable of performing work at less than the full range of medium work with postural and environmental limitations as these opinions are supported by citations to the record, including noting the claimant's obesity and OSA, and as they are generally consistent with the longitudinal medical evidence of record that documents some ongoing reporting of symptoms despite treatment, but generally

9

> normal and stable findings on physical examination and mild findings on objective studies, and are also consistent with the claimant's reported activity level as discussed herein."

*Id*. The ALJ also found the opinions of the psychological State Agency medical consultants Nicole Robicheau, Psy.D. and Joshua D. Schwartz, Ph. D. persuasive. *Id*. Based on these opinions, the ALJ determined:

> "[Plaintiff's] mental impairments have resulted in no more than moderate limitations in his mental functioning that would not preclude her from performing work with non-exertional mental limitations as these opinions are supported by citations to the record, including noting the claimant's substance abuse difficulty, but generally normal mental status findings, and as they are also generally consistent with the longitudinal medical evidence that documents generally normal and stable mental status examination findings when the claimant is compliant with treatment and not under the influence alcohol and with the claimant's reported activity level as discussed herein.

*Id*. at 28-29.

Thereafter, the ALJ noted she would not provide articulation about the evidence that is inherently neither valuable nor persuasive in accordance with 20 CFR 404.1520b(c). *Id*. at 29. The ALJ found her RFC assessment was supported by and consistent with the objective medical evidence and with Plaintiff's reported activity level. *Id*. The ALJ found that "while the objective evidence does indicate that the claimant has severe impairments for which he continues to have ongoing symptoms and limitations, it does not support a finding that the claimant is more severely limited than discussed above." *Id*. The ALJ found that to the extent Plaintiff's allegations were consistent with the overall evidence of record, they had been specifically accounted for in the RFC. *Id*.

The ALJ determined that Plaintiff was unable to perform any past relevant work (step four) but could perform a significant number of other jobs in the national economy, including laundry worker, dishwasher, and dry cleaner helper, *supra*, (step five). *Id*. at 29-31. The ALJ concluded Plaintiff has not been under a disability as defined in the Act. *Id*. at 31.

/ / /

**E. The Appeals Council's Decision**

On June 16, 2022, Plaintiff through counsel, requested a review of the ALJ's decision. *Id*. at 336-38. Plaintiff asserted the ALJ erred in her decision, without explication. *I*d. at 338. On October 4, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. *Id*. at 2-5. Plaintiff filed this action on December 5, 2022, seeking judicial review of the denial of his application for benefits. (Doc. 1). The Commissioner lodged the administrative record on March 7, 2022. (Doc. 12). Plaintiff filed an opening brief on July 21, 2023. (Doc. 17). On November 6, 2023, Defendant filed a responsive brief. (Doc. 22).

## II. LEGAL STANDARD

**A. The Disability Standard**

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) and 1381(a). An individual is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment …"[3] *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). To achieve uniformity in the decision-making process, the Social Security regulations set out a five-step sequential evaluation process to be used in determining if an individual is disabled. *See* 20 C.F.R. § 404.1520; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004). Specifically, the ALJ is required to determine:

> (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe" impairments, (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the RFC to perform past relevant work and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrated by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

*Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on a claimant at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citing *Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 689 (9th Cir. 2009)).

Before making the step four determinations, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e). The RFC is the most a claimant can still do despite their limitations and represents an assessment based on all relevant evidence. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. § 416.920(e); § 416.945(a)(2). *E.g.*, *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) ("These regulations inform us, first, that in assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe."). The RFC is not a medical opinion. 20 C.F.R. § 404.1527(d)(2). Rather, it is a legal decision that is expressly reserved to the Commissioner. 20 C.F.R. § 404.1546(c); *see Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").

At step five, the burden shifts to the Commissioner to prove that Plaintiff can perform other work in the national economy given the claimant's RFC, age, education, and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). To do this, the ALJ can use either the Medical-Vocational Guidelines or rely upon the testimony of a VE. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony and for resolving ambiguities.'" *Ford*, 950 F.3d at 1149 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

**B. Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, a court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A

court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

"Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir, 1995)). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotations and citations omitted). "If the evidence 'is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Ford*, 950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. *Stout*, 454 F.3d at 1055-56. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determinations." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (quotation and citation omitted). The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

### III.   LEGAL ISSUES

Plaintiff asserts the ALJ's RFC determination is not supported by substantial evidence because she failed in her duty to complete the record and obtain an opinion of Plaintiff's mental RFC from an examining physician. (Doc. 17 at 2, 5-8). Additionally, Plaintiff argues the ALJ's RFC determination is unsupported by substantial evidence as she failed to properly evaluate Plaintiff's fatigue and the impact it would have on her RFC. *Id*. at 2, 8-9.

///

13

## IV. DISCUSSION

**A. Whether the ALJ Erred by Failing to Complete the Record and Obtain an Opinion of Plaintiff's Mental RFC from an Examining Physician.**

Plaintiff contends the ALJ improperly adopted the opinions of non-examining state agency psychological consultants when they had not reviewed the records regarding Plaintiff's hospitalization for psychiatric hold due to suicidal thoughts. (Doc. 17 at 7).

First, to the extent Plaintiff challenges the record as incomplete this issue is not properly preserved for appeal. "[W]hen claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). As the Commissioner points out, Plaintiff was represented by counsel at the administrative hearing and through his request to the Appeals Council. (Doc. 22 at 3-4). Plaintiff's counsel did not raise this issue with the ALJ or Appeals Council. *Id.*; AR at 62-63, 336-38. Instead, Plaintiff's counsel informed the ALJ that she had an opportunity to review the record and had no objections to anything currently in the record. *Id.* at 62. Further, the ALJ admitted 212 pages of evidence, five documents, into the record despite the law firm representing Plaintiff not adhering to the five-day rule. *Id.* Thus, the record demonstrates Plaintiff had the opportunity to raise this issue and/or present new evidence during the administrative proceedings. *Howard v. Astrue*, 330 F. App'x 128, 130 (9th Cir. 2009) (issue waived because attorney had opportunity to raise it at administrative hearing but did not do so); *Valdez v. Berryhill*, No. SA CV 16-0980 JCG, 2018 WL 317799, at *1 (C.D. Cal. Jan. 5, 2018) (issue not properly preserved where the plaintiff was represented by counsel at the administrative hearing and specifically stated he had "no objection" to the record when asked by the ALJ).

Even if the issue had not been waived, Plaintiff has not demonstrated any error warranting remand. Although Plaintiff argues that the ALJ erred by failing to obtain an opinion from an examining medical provider (Doc. 17 at 6-7), it was Plaintiff's burden to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990); 42 § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. §§

404.1512(a) ("[Y]ou have to prove to us that you are ... disabled ...."); 416.912(a).

Plaintiff failed to submit a medical opinion of any examining physician regarding Plaintiff's mental condition. Because it is Plaintiff's burden to present evidence of disability, the mere absence of an opinion from a treating or examining physician does not give rise to a duty to develop the record; rather, "[t]he duty to develop the record is 'triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.'" *Kaur v. Kijakazi*, No. 1:22-cv-0697 JLT CDB, 2023 WL 6241821, at *2 (E.D. Cal. Sept. 26, 2023 (quoting *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)). *See, e.g., Harrison v. Saul*, No. 1:19-cv-01683-BAM, 2021 WL 1173024, at *5 (E.D. Cal. Mar. 29, 2021) ("Because it is the Plaintiff's burden to present evidence of disability, the mere absence of an opinion from an examining physician does not give rise to a duty to develop the record.").

Here, there is no indication that the record was ambiguous or inadequate to allow for proper evaluation. The record included Plaintiff's testimony and Plaintiff's complete medical records. Plaintiff's Counsel confirmed she had an opportunity to review the record and had no objections to anything currently in the record. AR at 62. Moreover, while Plaintiff points out that the state medical consultants did not review all of Plaintiff's medical evidence (Doc. 17 at 7), this does not render the RFC unsupported. *Maliha K. v. Saul*, No. 8:19-CV-00877-MAA, 2020 WL 2113671, at *6 (C.D. Cal. May 4, 2020) ("[T]he fact that a non-examining state agency physician fails to review the entire record does not, by itself, mean that his or her opinion cannot serve as substantial evidence."). *See Owen v. Saul*, 808 F. App'x 421, 423 (9th Cir. 2020) ("At the time they issued their opinions, the non-examining experts had considered all the evidence before them, satisfying the requirements set forth in 20 C.F.R. § 404.1527(c)(3)."). "ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make an RFC determination." *Bufkin v. Saul*, 836 F. App'x 578, 579 (9th Cir. 2021).

It appears Plaintiff also argues that the ALJ impermissibly offered her lay interpretation of raw medical data in formulating Plaintiff's RFC. (Doc. 17 at 6-7). This argument is unpersuasive. The nature of the ALJ's responsibility is to interpret the evidence of record, including medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Such a

1    responsibility does not result in the ALJ committing legal error when he assesses an RFC that is
2    consistent with the record. *See Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL
3    4195012, at *4 (E.D. Cal. Aug. 22, 2014) ("[I]t is the ALJ's responsibility to formulate an RFC
4    that is based on the record as a whole, and thus the RFC need not exactly match the opinion or
5    findings of any particular medical source.") (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th
6    Cir. 1989)).
7          Here, the ALJ considered not only the opinions of Drs. Robicheau and Schwartz,
8    psychological State Agency medical consultants, but also the objective medical evidence post-
9    dating their opinions, including that which Plaintiff cites in his briefing. *See* AR at 27 (discussing
10   records showing Plaintiff's hospitalization and inpatient treatment records for recurrent
11   depression, alcohol withdrawal, and suicidal thoughts from December 29, 2021, through January
12   2022). The ALJ then interpreted that evidence – as she is charged to do – and formulated
13   Plaintiff's RFC. *See Mills*, 2014 WL 4195012, at *4 (finding argument that the ALJ was
14   improperly attempting to "play doctor" lacked merit where the ALJ "carefully analyzed the
15   various medical opinions, treatment records, and plaintiff's own testimony in formulating an
16   RFC."). *See also* 20 C.F.R. § 404.927(d)(2) ("the final responsibility for deciding [RFC] is
17   reserved to the Commissioner"), § 404.945(a)(1) ("We will assess your residual functional
18   capacity based on all the relevant evidence in your case record."). For example, although the ALJ
19   found persuasive the limitations opined by Drs. Robicheau and Schwartz (AR at 118, 137-38),
20   those opinions were not dispositive and the ALJ formulated an RFC that included additional
21   social limitations. AR at 23. These additional restrictions included limiting the time Plaintiff
22   could maintain attention and concentration to perform and persist at simple tasks at a consistent
23   pace without requiring redirection, occasional interactions with the public, coworkers, and
24   supervisors and work involving no more than occasional changes in the routine work setting. *Id*.
25         Additionally, although Plaintiff argues that the ALJ improperly interpreted the medical
26   evidence regarding Plaintiff's impairments, Plaintiff does not identify what additional functional
27   limitations the ALJ failed to account for in her RFC assessment. *See* (Doc. 17 at 5-8.) Thus,
28   Plaintiff's argument that the ALJ erred in not considering the full record or by failing to obtain an

1  updated medical opinion is unavailing.

2  **B.     Whether the ALJ Erred by Failing to Properly Evaluate Plaintiff's Fatigue
3  and the Impact it Would Have on Her RFC**

4  Separately, Plaintiff argues the ALJ "provided no accounting as to how [she] considered
5  Plaintiff's claims of fatigue and lethargy when formulating his RFC determination." *Id*. at 8.
6  Plaintiff asserts he was repeatedly noted to have reported fatigue and testified that he experienced
7  fatigue. *Id*.

8  A Plaintiff's RFC is "based on all the relevant evidence [in the claimant's] case record."
9  20 C.F.R. § 404.1545(a)(1).  While the ALJ must consider all relevant evidence and case records,
10 the ALJ is not necessarily required to include every impairment in the final RFC if the record
11 indicates the non-severe impairment does not cause a significant limitation in the plaintiff's
12 ability to work.  *See Burch*, 400 F.3d at 684 (ALJ's failure to include functional limitations from
13 obesity in the plaintiff's RFC was not an error where the plaintiff did "not set forth, and there is
14 no evidence in the record, of any functional limitations as a result of her obesity that the ALJ
15 failed to consider."); *see also Sisco v. Colvin*, No. 13-CV-01817-LHK, 2014 WL 2859187, at *8
16 (N.D. Cal. June 20, 2014) ("As the ALJ determined that Sisco's mental impairment imposed 'no
17 significant functional limitations,' the ALJ was not required to include a mental limitation in the
18 hypotheticals posed to the vocational expert.").

19 Here in formulating the RFC, the ALJ recognized that Plaintiff suffered from bradycardia,
20 including its related fatigue symptom.  AR at 20.  The ALJ held Plaintiff's bradycardia did not
21 meet the durational requirement and did "not cause functional impairments." *Id*.; *Bowen*, 482
22 U.S. at 146 n.5 (a claimant "must bear the burden" of showing "that he has a medically severe
23 impairment or combination of impairments" that meets the duration requirement) (citing, *inter
24 alia*, 42 U.S.C. § 423(d)(1)(A)).  Thus, it was appropriate for the ALJ to not include bradycardic
25 fatigue in Plaintiff's RFC.

26 Moreover, the ALJ addressed Plaintiff's testimony that he experienced fatigue.  The ALJ
27 found that, although Plaintiff's medically determinable impairments could reasonably be expected
28 to cause some of his alleged symptoms, his statements concerning their intensity, persistence, and

17

limiting effects were not entirely consistent with the medical and other evidence of record. AR at 25; *see Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."). Plaintiff has not challenged this finding. Therefore, the Court finds no legal error in the ALJ's formulation of Plaintiff's RFC without inclusion of additional limitations to reflect Plaintiff's fatigue.

## V.   CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ. *Tackett*, 180 F.3d at 1098. On the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence and proper analysis. For this and the reasons set forth above, IT IS HEREBY ORDERED:

1. Plaintiff's motion for summary judgment (Doc. 17) be DENIED;
2. The decision of the Commissioner of Social Security be AFFIRMED.
3. The Clerk of the Court be directed to enter judgment in favor of the Commissioner of Social Security and to close this case.

IT IS SO ORDERED.

Dated:   **March 27, 2024**

UNITED STATES MAGISTRATE JUDGE